**WO**

# IN THE UNITED STATES DISTRICT COURT
# FOR THE DISTRICT OF ARIZONA

| | |
|---|---|
| Kay Jean Banda,<br><br>    Plaintiff,<br><br>v.<br><br>Commissioner of Social Security Administration,<br><br>    Defendant. | No. CV-18-01428-PHX-SPL<br><br>**ORDER** |

    Plaintiff Kay Jean Banda seeks judicial review of the denial of her application for disability insurance benefits under the Social Security Act, 42 U.S.C. § 405(g).

    Plaintiff argues that: (1) the Administrative Law Judge ("ALJ") erred in finding Plaintiff's gastrointestinal disorders were not severe; (2) the ALJ accorded inadequate weight to the opinions of Plaintiff's treating physicians; (3) the vocational expert's testimony was not supported by substantial evidence; and (4) the ALJ erred in discrediting Plaintiff's symptom testimony (Doc. 13 at 2).

    A person is considered "disabled" for the purpose of receiving social security benefits if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which can be expected to result in death or which has lasted or can be expected to last for a continuous period of not less than 12 months." 42 U.S.C. § 423(d)(1)(A). The Social Security Administration's decision to deny benefits should be upheld unless it is based on legal error or is not supported by substantial evidence. *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008).

"Substantial evidence is more than a mere scintilla but less than a preponderance." *Bayliss v. Barnhart*, 427 F.3d 1211, 1214 n.1 (9th Cir. 2005) (citation omitted). "It means such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Richardson v. Perales*, 402 U.S. 389, 401 (1971) (citation omitted). The Court must review the record as a whole and consider both the evidence that supports and the evidence that detracts from the ALJ's determination. *Jones v. Heckler*, 760 F.2d 993, 995 (9th Cir. 1985).

**I. DISCUSSION**

**A. IMPAIRMENT ANALYSIS**

Plaintiff first argues that the ALJ erred in finding her gastrointestinal disorder was not severe (Doc. 13 at 16-19). At step two of the sequential evaluation process, the ALJ considers the medical severity of the claimant's impairments. 20 C.F.R. § 404.1520(a)(ii). This step is essentially "a de minimis screening device [used] to dispose of groundless claims." *Smolen v. Chater*, 80 F.3d 1273, 1290 (9th Cir. 1996) (citation omitted). "An impairment or combination of impairments can be found 'not severe' only if the evidence establishes a slight abnormality that has 'no more than a minimal effect on an individual's ability to work.'" *Id*.

To support the finding that Plaintiff's diverticulitis was not severe, the ALJ found as follows (AR[1] 20-21):

> In terms of the claimant's diverticulitis, the records indicate that the claimant was diagnosed with acute diverticulitis, after reporting severe diarrhea and abdominal pain. However, the records stated that the claimant was prescribed a 10-day medication regime that improved her symptoms by 80%. Specifically, the treatment records reflect that while on medication, the claimant was able to tolerate solid foods, no longer had blood in her stool, and experienced minimal abdominal pain. This indicates to the undersigned that the claimant's diverticulitis is being managed medically and should be amendable to proper control by adherence to recommended medical management and medication compliance. Secondary to the claimant's diverticulitis, the records show that the claimant is status post laparoscopic sigmoid colectomy, left hemicolectomy, diverting ileostomy, and ileostomy reversal (Exhibits 13F/29 & 35, 19F/10). However, the records show that all of these procedures occurred in late 2014 and have not been performed on the

---

[1] Administrative Record (*see* Doc. 12).

> claimant again since then. The records also indicate that the claimant handled the procedures well (Exhibit 13F/51). This indicates to the undersigned that the claimant's status post laparoscopic sigmoid colectomy, left hemicolectomy, diverting ileostomy, and ileostomy reversal are isolated incidences that have since resolved with no further issues.

The ALJ thus found that Plaintiff's diverticulitis appeared to be resolved after various medical procedures performed in late 2014, or was otherwise managed by medication.

To support the decision, the ALJ primarily relies on evidence that Plaintiff's symptoms were properly managed when she adhered to a recommended medication regimen (AR 20). The ALJ, however, failed to include any citation to the record to support this finding, and Defendant has entirely ignored Plaintiff's assertion that this conclusion is baseless in the Response Brief. Moreover, to the extent the ALJ found that Plaintiff handled her hospital treatments well, suggesting that her issues were resolved, the record indicates that she continued to suffer from recurrent nausea (AR 826, 828), vomiting (AR 826, 828), abdominal pain (AR 828), diarrhea (AR 824), and blood in her stool or rectal bleeding (AR 824, 828). It is also unclear to this Court, how tolerating a surgical procedure is any indication of its actual success in remedying the underlying problem. The Court thus finds that the evidence demonstrates Plaintiff's diverticulitis constituted more than a "slight abnormality," and will remand the issue for further proceedings.

### B. PLAINTIFF CREDIBILITY

Plaintiff next argues the ALJ erred in rejecting Plaintiff's subjective complaints. In evaluating a claimant's testimony, the ALJ is required to engage in a two-step analysis. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). First, the ALJ must decide whether the claimant has presented objective medical evidence of an impairment reasonably expected to produce some degree of the symptoms alleged. *Id*. If the first test is met and there is no evidence of malingering, the ALJ can reject the testimony regarding the severity of the symptoms only by providing specific, clear, and convincing reasons for the rejection. *Id*. Here, the ALJ found Plaintiff's medical impairments could reasonably be expected to cause some of the alleged symptoms, but concluded that her statements as to the intensity

or limiting effects of those symptoms were not entirely credible (AR 24).

Plaintiff alleges that the ALJ rejected Plaintiff's testimony solely based on a lack of objective medical evidence to support her allegations (Doc. Doc. 16 at 2-4). Plaintiff further claims that Defendant's argument that the ALJ discounted her symptoms based on her inconsistent use of an assistive device, a lack of more aggressive treatment or referral to a specialist, and "controlled" diabetes are impermissible ad hoc rationalizations (Doc. 16 at 2). The Court disagrees with Plaintiff's characterization, and finds those reasons were explicitly discussed by the ALJ.

In rejecting Plaintiff's testimony, the ALJ found, in part, that Plaintiff's testimony that she was prescribed an ambulatory device was contradicted by the record, which failed to mention any need for a walker or cane (AR 24). The ALJ also noted that Plaintiff did not use an assistive device at the hearing or during her physical examination. In her Reply Brief, Plaintiff only argues that an ALJ cannot reject subjective complaints based solely on a lack of objective medical evidence (Doc. 16 at 3-4). The ALJ can, however, consider "testimony that appears less than candid." *See Smolen*, 80 F.3d at 1284. Nevertheless, upon review, this Court finds that Plaintiff's testimony is not, in fact, inconsistent with the record. Plaintiff stated that Dr. Bhalla "told [her] to get a walker," she obtained one from her father, and she primarily uses it immediately after taking medication or when walking on the tile floor in her home (AR 59-60). Although it may not have been medically necessary, and the use of a non-prescribed ambulatory device might be omitted from Plaintiff's residual functional capacity ("RFC"), the Court does not find her testimony was such that it was inconsistent with the record.

Similarly, the ALJ also found that Plaintiff's testimony as to the side effects of her medication were inconsistent with her questionnaire (AR 24). The ALJ stated that Plaintiff testified that her medication caused her to "experience excessive sleepiness" (AR 24), but noted her questionnaire indicated that she only slept four or five hours a night, "which may also account for her need to nap frequently throughout the day" (AR 24). How much of Plaintiff's nap schedule is due to medication as opposed to the hours of sleep she gets at

night is speculative at best, and the Court finds this reasoning to discount Plaintiff's testimony to be insufficient.

The ALJ also found that "the lack of more aggressive treatment, surgical intervention, or even a referral to a specialist again suggests the claimant's symptoms and limitations were not as severe as she alleged" (AR 23). In considering a claimant's treatment record, however, "the adjudicator must not draw any inferences about an individual's symptoms and their functional effects from a failure to seek or pursue regular treatment without first considering any explanations the individual may provide, or other information in the case record, that may explain infrequent or irregular medical visits or failure to seek medical treatment." SSR 96-7P, 1996 WL 374186, at *7-8 (1996). Here, as even noted by the ALJ (AR 23), one of Plaintiff's treating physicians opined that Plaintiff did not necessarily need surgical treatment for her meniscus tear as it was degenerative in nature (AR 787), and this advice provides a legitimate reason for not pursuing surgical intervention. *See id*. In addition, it is unclear to the Court what other aggressive treatment the ALJ believes Plaintiff should have pursued for her fibromyalgia, diabetes with neuropathy, and osteoarthritis. Accordingly, this reason, as presented, is insufficient.

Finally, the ALJ discredited Plaintiff's subjective testimony as her allegations of disabling symptoms were inconsistent with the medical evidence. First, the Court notes that any alleged lack of corroborating medical evidence, and the alleged severity of pain, is not inconsistent with fibromyalgia, which the ALJ took into consideration in determining Plaintiff's RFC. Moreover, although the lack of medical evidence can be considered in a credibility analysis, it cannot be the only basis for discounting subjective symptom testimony. *Bunnell v. Sullivan*, 947 F.2d 341, 345 (9th Cir. 1991) ("[O]nce the claimant produces objective medical evidence of an underlying impairment, [the ALJ] may not reject a claimant's subjective complaints based solely on a lack of objective medical evidence to fully corroborate the alleged severity of pain."). Having found the ALJ's other justifications for discounting Plaintiff's symptom testimony were reached in error, this

reason alone cannot suffice.

## C. MEDICAL OPINIONS

Plaintiff argues that the ALJ accorded inadequate weight to the opinion of Plaintiff's treating physicians, Dr. Rajesh Bhakta and Dr. Ravi Bhalla (Doc. 13 at 19-23).

> To reject an uncontradicted opinion of a treating or examining doctor, an ALJ must state clear and convincing reasons that are supported by substantial evidence. If a treating or examining doctor's opinion is contradicted by another doctor's opinion, an ALJ may only reject it by providing specific and legitimate reasons that are supported by substantial evidence.

*Bayliss v. Barnhart*, 427 F.3d 1211, 1216 (9th Cir. 2005) (internal citation omitted). "The ALJ can meet this burden by setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings." *Magallanes v. Bowen*, 881 F.2d 747, 751 (9th Cir. 1989).

Here, Dr. Bhakta opined that Plaintiff could only sit, stand, and walk for an hour or less in a work day, would need to change positions every 30 minutes, could occasionally grasp or reach, could occasionally lift and carry up to ten pounds, and that Plaintiff's impairments would interfere with her ability to concentrate (AR 25). The ALJ gave little weight to Dr. Bhakta's medical opinion because "his assessment contrasts sharply with the medical evidence and is not supported by the treatment records" (AR 25). The ALJ, however, failed to explain how the record undermines Dr. Bhakta's conclusions regarding Plaintiff's medical conditions. *See Embrey v. Bowen*, 849 F.2d 418, 421–22 (9th Cir. 1988) ("The ALJ must do more than offer his conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct."). Because the ALJ's statement was conclusory in nature, it cannot serve as a specific and legitimate reason for rejecting Dr. Bhakta's opinion.

The ALJ further rejected Dr. Bhakta's opinion because "it appears that Dr. Bhakta may have relied quite heavily on the subjective reports of symptoms and limitations provided by the claimant, and seemed to uncritically accept as true most, if not all, of what the claimant reported," despite good reasons to question Plaintiff's reliability (AR 25-26).

"A physician's opinion of disability 'premised to a large extent upon the claimant's own accounts of [her] symptoms and limitations' may be disregarded where those complaints have been 'properly discounted.'" *Morgan v. Comm'r of Soc. Sec. Admin.*, 169 F.3d 595, 602 (9th Cir. 1999) (quotation omitted). As already discussed above, the ALJ erred in discrediting Plaintiff's symptom testimony and there is no evidence of malingering. In addition, there is nothing to indicate Dr. Bhakta relied on Plaintiff's statements more heavily than his own clinical observations (*see* AR 344 (clinical and laboratory findings), 407 (clinical and laboratory findings), 673 (clinical and laboratory findings, including review of rheumatology records), 777 (MRI Right Femur), 778-79 (MRI Right Knee, 780 (MRI Right Femur)). *See Regennitter v. Comm'r of Soc. Sec. Admin.*, 166 F.3d 1294, 1300 (9th Cir. 1999). Accordingly, the Court finds the ALJ erred in rejecting Dr. Bhakta's opinion for the reasons provided and will remand the issue to the ALJ for further consideration.[2]

The ALJ also afforded little weight to Dr. Bhalla's medical opinion, finding his report contained inconsistencies and the course of treatment he proscribed was not consistent with what one would expect if Plaintiff were truly disabled. First, the Court finds the inconsistencies relied on by the ALJ are not, in fact, true inconsistencies. The ALJ found that in 2015, Dr. Bhalla opined that Plaintiff's condition limited her ability to grasp, lift weights, stand, sit for prolonged periods, walk, reach, bend, and kneel (AR 672). The ALJ further found that opinion to be inconsistent with a 2017 questionnaire, in which Dr. Bhalla stated he could not determine for how long or to what extent Plaintiff was limited in those same areas (AR 678-682). Upon closer review, however, Dr. Bhalla's

---

[2] Although not argued, the Court notes that reliance on subjective symptoms is customary with fibromyalgia. Fibromyalgia is "a rheumatic disease that causes inflammation of the fibrous connective tissue components of muscles, tendons, ligaments, and other tissue." *Benecke v. Barnhart*, 379 F.3d 587, 589 (9th Cir. 2004). Common symptoms include "chronic pain throughout the body, multiple tender points, fatigue, stiffness, and a pattern of sleep disturbance that can exacerbate the cycle of pain and fatigue associated with the disease." *Id*. at 590. Important here, however, is that "there are no laboratory tests to confirm the diagnosis." *Id*. In fact, "[p]atients with [fibromyalgia] usually look healthy." *Rollins v. Massanari*, 261 F.3d 853, 863 (9th Cir. 2001). As a result, "[t]he disease is diagnosed entirely on the basis of patients' reports of pain and other symptoms." *Benecke*, 379 F.3d at 590.

2015 opinion, although acknowledging her limitations, explicitly states that "[t]he exact number of hours for sitting, standing and the amount of weight the patient can lift is not within the scope of this practice" (AR 672). Accordingly, based on that statement, it is unsurprising that Dr. Bhalla's 2017 evaluation states that Plaintiff is generally restricted, but declines to opine as to the exact number of hours she can sit or stand in a workday, or the number of pounds she can lift or carry. Because the reports are not, in fact, inconsistent, the Court finds that reasoning to be insufficient. To the extent the ALJ notes that the course of treatment pursued by Dr. Bhalla was inconsistent with what one would expect for a disabled individual, the Court finds that reasoning to be conclusory, vague, and deficient. *See Trevizo v. Berryhill*, 871 F.3d 664, 677 (9th Cir. 2017) ("[T]he failure of a treating physician to recommend a more aggressive course of treatment, absent more, is not a legitimate reason to discount the physician's subsequent medical opinion about the extent of disability."). Accordingly, the Court finds the ALJ erred in rejecting Dr. Bhalla's opinion for the reasons provided and will remand the issue to the ALJ for further consideration.

### D. VOCATIONAL EXPERT TESTIMONY

Finally, Plaintiff argues that the ALJ erred in failing to include Plaintiff's limited ability to reach in claimaint's RFC (Doc. 13 at 23-24). At step four of the sequential analysis, the ALJ assesses the claimant's RFC and determines whether the claimant is still capable of performing past relevant work. 20 C.F.R. § 404.1520(a)(4)(iv). If so, the claimant is not disabled and the inquiry ends. *Id.* If not, the ALJ proceeds to the fifth and final step, where he determines whether the claimant can perform any other work in the national economy based on the claimant's RFC, age, education, and work experience. 20 C.F.R. § 404.1520(a)(4)(v). Vocational testimony provides the ALJ with evidence to help determine whether a claimant is capable of performing past relevant work in light of their RFC.

Plaintiff argues that the ALJ's determination that Plaintiff is capable of performing past relevant work was based on an erroneous hypothetical to the vocational expert which

included, and turned on, the ability to "frequently reach." Defendant argues that the ALJ did not err in relying on the hypothetical because there were competing opinions on the reaching issue, and the ALJ had assigned those opinions supporting Plaintiff's alleged limitation little weight. Because the Court has already found the ALJ's reasons for rejecting Dr. Bhakta and Dr. Bhalla's opinions to be insufficient, the Court will remand this issue for further consideration.

## II. CONCLUSION

It is in this Court's discretion to reverse and remand for an award of benefits or further proceedings. *Holohan v. Massanari*, 246 F.3d 1195, 1210 (9th Cir. 2001). In this case, remand is appropriate to properly consider Plaintiff's diverticulitis, the medical opinions of Plaintiff's treating physicians, and Plaintiff's subjective complaints. Accordingly,

**IT IS ORDERED** that the final decision of the Commissioner of Social Security is **vacated and remanded** to the Commissioner of the Social Security Administration for further proceedings consistent with this order.

**IT IS FURTHER ORDERED** that the Clerk of Court shall enter judgment accordingly and terminate this action.

Dated this 29th day of August, 2019.

Honorable Steven P. Logan
United States District Judge